UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SAMER HAMADEH and ALISON HARMELIN,

                            Plaintiffs,                            25-cv-5401 (PKC)

       -against-                                   OPINION AND ORDER

CENLAR FSB,

                            Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Cenlar FSB ("Cenlar") services a home equity line of credit and a primary mortgage loan held by plaintiffs Samer Hamadeh and Alison Harmelin.  As described in the Amended Complaint (the "Complaint" or "Compl't"), plaintiffs first requested modifications of their loans sometime in "mid-2023."  The parties' correspondence about the requested modifications apparently continued into late 2024.  The Complaint implies that plaintiffs stopped making payments on their loans during this time, though it stops short of expressly alleging as much.  As the parties engaged in prolonged correspondence, plaintiffs' FICO scores dropped, and the spending limits of their credit cards and credit lines were frozen, reduced or canceled.

        Plaintiffs bring claims against Cenlar under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(3) ("RESPA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA") and section 349 of the New York General Business Law.  The gist of plaintiffs' claims is that Cenlar impermissibly disclosed to third-party credit-rating agencies inaccurate or protected information about plaintiffs' creditworthiness.

        Cenlar moves to dismiss the Complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P. As will be explained, the RESPA claim will be dismissed because the Complaint does not

plausibly allege the existence of a "qualified written request" under the statute, and because the relevant RESPA provision does not apply to written requests for a loan modification. The FCRA claim will be dismissed because the Complaint does not allege that plaintiffs took the steps required to bring a claim under the statute's narrow provision allowing for a private right of action. With the dismissal of the two federal claims, the parties will be directed to submit letter-briefs on whether the Court ought to exercise supplemental jurisdiction over plaintiffs' state law claim arising under section 349 of the New York General Business Law.

DISCUSSION.

Cenlar is the servicer of plaintiffs' home equity line of credit and mortgage loan. (Compl't ¶¶ 7-9.) The loans are secured by an apartment located on East 72nd Street in Manhattan. (Compl't ¶ 6.) In mid-2023, plaintiffs first wrote to Cenlar to request modifications to their loans and the parties began to correspond about plaintiffs' request. (Compl't ¶¶ 9-11.) The Complaint does not describe the modifications sought by plaintiffs.

On January 2, 2024, plaintiffs received a written notice from Cenlar stating that they were behind on their mortgage payments and that Cenlar had alerted credit-ratings agencies about the delinquencies. (Compl't ¶¶ 12-13.) Plaintiffs continued to correspond with Cenlar, specifically through its assistant general counsel, Kevin G. McDonald. (Compl't ¶ 14.) The Complaint alleges that McDonald told plaintiffs that while their requested modifications remained under review, their credit scores and credit lines would not be negatively affected. (Compl't ¶¶ 15-16.) In March 2024, plaintiffs' credit scores began to decrease. (Compl't ¶ 17.)

In and around August 2024, plaintiffs made inquiries to McDonald about the status of their modification requests and any purported delinquencies on the loans. (Compl't ¶ 18.) Plaintiffs also requested that Cenlar "correct the Loans, which were improperly deemed

incomplete, marking Plaintiffs as deficient borrowers." (Compl't ¶ 19.) Cenlar, via McDonald, allegedly told plaintiffs that while the modifications remained pending, Cenlar would "suppress" any negative credit reporting. (Compl't ¶ 21.) Plaintiffs submitted additional documents as requested by Cenlar but continued to receive foreclosure notices and their credit scores continued to decline. (Compl't ¶¶ 22-23, 26.)

Plaintiffs assert that Cenlar improperly reported their loans as delinquent even as plaintiffs "were working with" Cenlar to obtain modifications. (Compl't ¶¶ 25-26.) Plaintiffs assert that Cenlar did not timely inform them of any outstanding delinquencies before alerting outside parties and that Cenlar continued to tell plaintiffs that it would not report any deficiencies to credit agencies. (Compl't ¶¶ 27-28.)

Hamadeh's FICO score ultimately dropped from 680 to 609 and Harmelin's dropped from 715 to 586, their credit card limits were cut by thousands of dollars, and certain credit cards and lines of credit were terminated as a result of their lower credit scores. (Compl't ¶¶ 31-33, 35.) Plaintiffs assert that they alerted Cenlar to their lower credit scores; Cenlar continued to wrongfully report plaintiffs' loans as delinquent. (Compl't ¶¶ 38-39.) Throughout this time, Cenlar continued to inform plaintiffs that they were aware of the pending status of their requested loan modifications, that they were working to correct and modify the loans, and that plaintiffs would be able to make regular payments on the loans. (Compl't ¶¶ 40-42.)

The Complaint states that "until recently Plaintiffs had not been able to make regular payments on the Loans because Cenlar had not been working diligently to correct and modify the Loans." (Compl't ¶ 43.) Plaintiffs assert that Cenlar misled them into believing that their loans "were protected while they remained pending," when, in truth, Cenlar had been reporting them as delinquent throughout. (Compl't ¶ 44.)

The Complaint invokes federal question jurisdiction.  (Compl't ¶ 3.)  Count One asserts a violation RESPA, 12 U.S.C. § 2605(e)(3).  (Compl't ¶¶ 49-69.)  Plaintiffs assert that Cenlar had a duty under the statute to protect their credit ratings after they submitted a "qualified written request" relating to a dispute about their mortgage payments, and that RESPA barred Cenlar from reporting any overdue payment for a sixty-day period after receipt of plaintiffs' request.  (Compl't ¶¶ 53-60.)  Count Two asserts that Cenlar violated the FCRA's prohibition against reporting inaccurate information to credit reporting agencies.  (Compl't ¶¶ 70-92.)  Count Three brings a claim of deceptive acts and practices under New York General Business Law section 349.  (Compl't ¶¶ 93-113.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A court assessing the sufficiency of a complaint must disregard legal labels or conclusions, which are not entitled to the presumption of the truth.  Iqbal, 556 U.S. at 678.  Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Michael Grecco Productions, Inc. v. RADesign, Inc., 112 F.4th 144, 150 (2d Cir. 2024) (quoting Sewell v. Bernardin, 795 F.3d 337, 339 (2d Cir. 2015)).  In reviewing a Rule 12(b)(6) motion, the Court assumes all factual allegations in the complaint to be true and draws

all reasonable inferences in favor of the non-moving party.  Peretti v. Authentic Brands Group LLC, 33 F.4th 131, 137 (2d Cir. 2022).

DISCUSSION.

        I.       The RESPA Claim Will Be Dismissed.

           A.  The Complaint Does Not Plausibly Allege the
               Existence of a "Qualified Written Request."

Plaintiffs assert that Cenlar violated section 2605(e)(3) of RESPA by reporting overdue payments to consumer reporting agencies within sixty days of receiving plaintiffs' "qualified written request."  (Compl't ¶ 53.)  The Court assumes without deciding that plaintiffs' allegations of decreased FICO scores and restricted access to lines of credit plausibly allege that they were damaged under RESPA.  See generally Manzolillo v. Nationstar Mortg., LLC, 765 F. Supp. 3d 157, 166 (E.D.N.Y. 2025) (Matsumoto, J.).  Because the Complaint does not plausibly allege the existence of a qualified written request, the RESPA claim will be dismissed.

"RESPA's overall goal [is] to protect consumers from 'abusive practices' that result in 'unnecessarily high settlement charges.'"  Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 122 (2d Cir. 2007) (quoting 12 U.S.C. § 2601(a)).  Plaintiff's RESPA claim arises from a provision that governs a servicer's response to a borrower's written inquiry.  12 U.S.C. § 2605(e).  RESPA establishes deadlines by which a servicer must respond to a borrower's "qualified written request" for information or clarification about a loan, and certain investigatory and corrective actions required from the servicer.  12 U.S.C. § 2605(e)(1), (2).  Section 2605(e)(3) states that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such

borrower and relating to such period or qualified written request, to any consumer reporting agency . . . ."

A "qualified written request" is defined as "a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that – (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B).

The RESPA claim will be dismissed because the Complaint does not plausibly allege the existence of a qualified written request.  "To plead a claim under the RESPA, plaintiff must offer proof either by attaching the letter or pleading with specificity such facts—such as when the letter was sent and to whom it was directed, why it was sent, and the contents of the letter—that the Court may determine if the letter qualifies as a QWR or notice of error."  Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 538 (E.D.N.Y. 2015) (Bianco, J.); accord Lopez v. Bayview Loan Servicing, LLC, 2017 WL 3396421, at *8 (S.D.N.Y. Aug. 8, 2017) (Oetken, J.) (dismissing RESPA claim because allegations describing a qualified written request were conclusory); Miller v. HSBC Bank U.S.A., N.A., 2015 WL 585589, at *10 (S.D.N.Y. Feb. 11, 2015) (Sweet, J.) (same); Kremenchutsky v. Citizens Bank N.A., 2025 WL 1249623, at *5 (E.D.N.Y. Apr. 30, 2025) (dismissing RESPA claim because complaint did not plausibly describe a qualified written request and it was "unclear" how many alleged requests were sent).

The Complaint broadly describes batches of correspondence with Cenlar, but it does not contain detail sufficient to plausibly allege the existence of a qualified written request, i.e., containing the information required by statute, including a statement of the reasons for the

borrower's belief "that the account is in error" or detailing "other information sought by the borrower." Indeed, it is not even apparent which item of correspondence they allege commenced the sixty-day period during which a servicer may not report an overdue payment to a consumer reporting agency under 12 U.S.C. § 2605(e)(3). It asserts that plaintiffs "requested loan modifications from Cenlar" in mid-2023 and engaged in "extensive correspondence" and "meaningful discussions" with Cenlar throughout 2023, which "continued" into 2024. (Compl't ¶¶ 9-11, 14.)

Plaintiffs "corresponded" again with Cenlar in August 2024, including a request to "correct" plaintiffs' designation as deficient borrowers. (Compl't ¶¶ 18-19.) Plaintiffs sent "multiple emails" in September and October 2024 "in an attempt to correct any outstanding deficiencies." (Compl't ¶ 24.) The Complaint identifies non-party McDonald, Cenlar's assistant general counsel, as the recipient of much, if not all, of their correspondence. (Compl't ¶ 14.) The Complaint's broad references to "correspondence," "discussions" and "emails" do not plausibly allege the existence of a "qualified written request" because they do not identify "the reasons" plaintiffs believed that any account was "in error" or describe how "sufficient detail" was given to Cenlar "regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

In addition, a regulation of the Consumer Financial Protection Bureau provides that a mortgage loan servicer may designate an address for a borrower to submit a qualified written request for information about a mortgage loan. 12 C.F.R. § 1024.36(b). An information box contained at the top of Cenlar's monthly Loan Statement addressed to plaintiffs, dated August 19, 2024, stated in boldfaced text: **\*Qualified Written Requests, notifications of error, or requests for information concerning your loan must be directed to PO Box 77423 Ewing**

**NJ 08628.** (ECF 19-3.)  Plaintiffs do not assert that they sent any correspondence to this address.[1]

Because the Complaint does not plausibly allege the existence of a qualified written request, the RESPA claim will be dismissed.

> B.  Inquiries Seeking a Loan Modification are Not Subject to RESPA.

The RESPA claim is separately dismissed because section 2605 governs "information relating to the servicing of [a] loan," 12 U.S.C. § 2605(e)(1)(A), and plaintiffs describe correspondence directed to loan modifications.  "Loan servicing inquiries that trigger RESPA have been 'consistently distinguished . . . from loan modification inquiries,' and courts have 'concluded that liability under § 2506(e)(1) does not inhere to loan modification inquiries.'"  Kremenchutsky, 2025 WL 1249623, at *5 (quoting Sutton v. CitiMortgage, Inc., 228 F. Supp. 3d 254, 266 (S.D.N.Y. 2017) (Failla, J.)); accord Gorbaty v. Wells Fargo Bank, N.A., 2014 WL 4742509, at *7 (E.D.N.Y. Sept. 23, 2014) (Garaufis, J.).

The Complaint repeatedly references communications about loan modifications, as opposed to information about loan servicing.  (See, e.g., Compl't ¶¶ 10 ("Throughout 2023, Plaintiffs engaged in extensive correspondence with Cenlar concerning such loan modification . . . ."), 18 ("In and around August 2024, Plaintiffs again corresponded with Mr. McDonald requesting a status of the Loans, the requested modifications and any alleged delinquencies."); 22 ("Throughout August 2024, Plaintiffs continued to submit additional documents to Cenlar, as requested, in connection with their loan modifications."); 24 ("Cenlar

---

[1] Though not annexed or expressly referenced in the Complaint, this document is properly considered on a Rule 12(b)(6) motion without converting the motion into one for summary judgment because it is integral to the Complaint.  See generally Kalyanaram v. Am. Ass'n of Univ. Professors at New York Inst. of Tech., Inc., 742 F.3d 42, 44 n.1 (2d Cir. 2014) ("on a motion to dismiss, a court may consider . . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.") (quotation marks omitted). Plaintiffs' opposition memo does not urge that the document ought not be considered on the motion to dismiss, nor does it address Cenlar's argument regarding the CFPB regulation and Cenlar's published address.

improperly reported Plaintiffs being delinquent on their loans while Plaintiffs were working with Cenlar to obtain loan modifications.").)

Because plaintiffs' communications with Cenlar related to loan modification requests, as opposed to information about loan servicing, the Complaint does not plausibly state a claim for relief under 12 U.S.C. § 2605(e).  The RESPA claim will be dismissed on this alternative ground.

II.    The FCRA Claim Will Be Dismissed.

Plaintiffs' FCRA claim asserts that Cenlar violated the FCRA, 15 U.S.C. § 1681, by inaccurately reporting delinquencies to credit-reporting agencies.  (Compl't ¶¶ 70-92.)  To the extent that plaintiffs assert that Cenlar knowingly provided inaccurate information to a credit reporting agency and thereafter failed to correct that information, the FCRA does not provide a private cause of action for such a claim.  Alternatively, if plaintiffs are asserting that Cenlar failed to take the investigative measures required after receiving notice of a dispute, the claim will be dismissed because the Complaint does not allege that a credit reporting agency alerted Cenlar to an inquiry, as is required under the FCRA.

The Complaint's allegations concerning the FCRA claim cite to 15 U.S.C. § 1681, which describes Congress's purpose in enacting the statute and delegates regulatory authority to certain agencies, but otherwise contains no substantive rights, obligations or restrictions.  The Court construes the Complaint to seek relief under 15 U.S.C. § 1681s-2, which sets forth certain rights and obligations concerning the accuracy of information furnished to credit reporting agencies.

Pursuant to 15 U.S.C. § 1681s-2(a), a person furnishing information to a credit reporting agency has certain duties respecting the accuracy of that information.  See generally Sprague v. Salisbury Bank & Tr. Co., 969 F.3d 95, 98-99 (2d Cir. 2020).  Section 1681s-2(a) creates two categories of duties: the duty to provide accurate consumer-credit information, which includes a

duty to refrain from knowingly reporting inaccurate information, and a separate duty to correct information that is discovered to be inaccurate.  Id. at 98 (citing 15 U.S.C. § 1681s-2(a)).  "[T]he FCRA does not provide a cause of action for violations of Section 1681s-2(a)."  Id. at 98-99; accord Longman v. Wachovia Bank, N.A., 702 F.3d 148, 151 (2d Cir. 2012) ("the statute provides that subsection (a) 'shall be enforced exclusively . . . by the Federal agencies and officials and the State officials identified in section 1681s of this title.'") (emphasis in original; quoting 15 U.S.C. § 1681s-2(d)).

To the extent that plaintiffs' FCRA claim is premised on the assertion that Cenlar provided false information to a credit reporting agency and later failed to correct that information, it will be dismissed.  For example, the Complaint asserts that Cenlar knowingly reported false information about plaintiffs to credit reporting agencies and failed to correct the inaccuracies after being contacted by plaintiffs.  (Compl't ¶¶ 74-75, 83, 86-87, 89.)  Such a claim falls within section 1681s-2(a), which, as explained by Sprague, 969 F.3d at 98-100, is not subject to a private right of action.

A private right of action is, however, available for a claim arising under 15 U.S.C. § 1681s-2(b), which governs the duties of a furnisher of information after receiving notice of a dispute. See Varlack v. TD Bank N., 2023 WL 6811108, at *3 (S.D.N.Y. Oct. 16, 2023) ("Federal district courts in this Circuit have held that an individual consumer can bring suit only for violations of Section 1681s-2(b).") (Swain, C.J.).  Under subsection (b), the furnisher has an obligation to investigate disputed information, review relevant information provided to the reporting agency, and modify, delete or block any inaccurately reported information.  15 U.S.C. § 1681s-2(b).  But "[t]he statute is clear that the notice triggering these duties must come from a [credit reporting agency], not the consumer."  Sprague, 969 F.3d at 99 (citing 15 U.S.C. § 1681i(a)(2) (once a "consumer reporting agency receives notice of a dispute from any consumer . . . the agency shall provide notification of the dispute to any person who provided any item of information in dispute")).  Section 1681s-2(b)(1)

expressly conditions its duties upon the furnisher's receipt of notice under section 1681i(a)(2) – i.e., from a consumer reporting agency.  "Accordingly, Section 1681s-2(b) is not implicated simply because a consumer contacts a furnisher such as [defendant] regarding inaccuracies in her credit report."  Sprague, 969 F.3d at 99; see also Obot v. Sallie Mae, 602 Fed. App'x 844, 846 (2d Cir. 2015) (affirming dismissal of section 1681s-2(b) claim "because [plaintiff] alleged no facts to suggest that he had noticed a dispute to a credit reporting agency regarding Sallie Mae's reporting of his delinquent student loan obligations.").

To the extent that plaintiffs FCRA claim is premised on any failure of Cenlar to comply with section 1681s-2(b), the claim will be dismissed because the Complaint does not allege that any credit reporting agency noticed a dispute concerning the accuracy of plaintiffs' information. The Complaint asserts that plaintiffs disputed their information directly with Cenlar and not through any credit reporting agency.  (Compl't ¶¶ 76-77.)  There is no allegation that Cenlar received notice from any credit reporting agency about claimed inaccuracies related to plaintiffs' information, as required to obtain relief under section 1681s-2(b).  See 15 U.S.C. § 1681i(a)(2); 15 U.S.C. § 1681s-2(b); Sprague, 969 F.3d at 99.  To the extent that plaintiffs seek relief under section 1681s-2(b), their FCRA claim will be dismissed.

Because the Complaint does not plausibly allege an actionable violation of the FCRA, Count Two will be dismissed.

III.    The Parties Shall Submit Letter-Briefs on the
        Court's Exercise of Supplemental Jurisdiction.

As noted, the Complaint invokes solely federal question jurisdiction.  Count Three asserts a state law claim of deceptive acts and practices under section 349 of the New York General Business Law.  (Compl't ¶¶ 93-113.)

District courts "may decline to exercise supplemental jurisdiction over a claim" where "the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C.

- 11 -

§ 1367(c)(3).  District courts are instructed "that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) (ellipsis omitted) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).  The relevant factors are "the traditional 'values of judicial economy, convenience, fairness, and comity.'"  Id. (quoting Cohill, 484 U.S. at 350).  Parties are entitled to notice and the opportunity to be heard on a court's exercise of supplemental jurisdiction.  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82-84 (2d Cir. 2018).

The Court will set a schedule on letter-briefs setting forth the parties' views on whether the Court ought to exercise supplemental jurisdiction over the remaining state law claim. CONCLUSION.

Defendant's motion to dismiss is GRANTED as to Count One and Count Two. The Clerk is respectfully directed to terminate the motion.  (ECF 18.)

No later than May 22, 2026, plaintiffs may file a letter-brief setting forth their views on whether the Court ought to exercise supplemental jurisdiction over the remaining state law claim. Defendant may respond no later than May 29, 2026.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       May 13, 2026

- 12 -